UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IRONWORKERS LOCAL 580 – JOINT      :
FUNDS, *et al.*,      :
     :
           Plaintiffs,      :
     :
           v.      :
     :
LINN ENERGY, LLC, *et al.*,      :
     :
           Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

13-cv-4875 (CM)

ECF Case

Electronically Filed

## MEMORANDUM OF LAW IN SUPPORT OF THE UNDERWRITER DEFENDANTS' <u>MOTION TO DISMISS COUNTS I AND III OF THE AMENDED COMPLAINT</u>

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Jay B. Kasner
Susan L. Saltzstein
Gary J. Hacker
Four Times Square
New York, New York  10036
(212) 735-3000
jay.kasner@skadden.com
susan.saltzstein@skadden.com
gary.hacker@skadden.com

Attorneys for the Underwriter Defendants

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

A.      The Parties ....................................................................................................................3

      1.      Plaintiffs ...........................................................................................................3

      2.      LinnCo and LINN .............................................................................................4

      3.      The Underwriter Defendants .............................................................................4

B.      The IPO .........................................................................................................................4

C.      LINN's and LinnCo's Non-GAAP Disclosures ...........................................................5

D.      The Claims Against the Underwriters ...........................................................................7

ARGUMENT ..............................................................................................................................9

COUNTS I AND III OF THE AMENDED COMPLAINT SHOULD  BE DISMISSED
AGAINST THE UNDERWRITER DEFENDANTS ..................................................................9

I.      PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR
      OMISSIONS IN THE OFFERING DOCUMENTS ........................................................10

II.      PLAINTIFFS' SECURITIES ACT CLAIMS FAIL TO SATISFY THE
      HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b) ....................................11

      A.      Plaintiffs' Securities Act Claims Sound in Fraud and Are Therefore
            Subject to the Heightened Pleading Requirements of Rule 9(b) ..........................11

      B.      The Amended Complaint Fails to Plead Fraud Against  the Underwriter
            Defendants with the Requisite Particularity .........................................................15

III.      PLAINTIFFS LACK STANDING TO SUE UNDER SECTION 12(a)(2) .......................18

CONCLUSION..........................................................................................................................19

## **TABLE OF AUTHORITIES**

### **CASES**

Page(s)

*In re American Bank Note Holographics, Inc. Securities Litigation*,
    93 F. Supp. 2d 424 (S.D.N.Y. 2000)...................................................................10, 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................9, 16

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................................3

*In re Axis Capital Holdings Ltd., Securities Litigation*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006).........................................................................10

*Caiafa v. Sea Containers Ltd.*,
    331 F. App'x 14 (2d Cir. 2009)................................................................................9, 11

*Caldwell v. Berlind*,
    No. 13-156-cv, 2013 WL 5779021 (2d Cir. Oct. 28, 2013) ........................................9, 16

*Chill v. General Electric Co.*,
    101 F.3d 263 (2d Cir. 1996)........................................................................................12

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
    No. 12-CV-5018 (JS)(AKT), 2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013)............17, 18

*Coronel v. Quanta Capital Holdings, Ltd.*,
    No. 07 Civ. 1405(RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)..................12, 15, 16

*DeMaria v. Andersen*,
    153 F. Supp. 2d 300 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003) ..................3, 18

*Fait v. Regions Financial Corp.*,
    655 F.3d 105 (2d Cir. 2011)....................................................................................10, 16

*Galvin v. First National Monetary Corp.*,
    624 F. Supp. 154 (E.D.N.Y. 1985) ..............................................................................17

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009)...............16

*Hallmark Investment Holding Corp. v. Donald Paul Braman Trust*,
    No. 12 Civ. 8045(CM), 2013 WL 2933372 (S.D.N.Y. June 13, 2013)..........................3, 9

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07 Civ. 0976(LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008).......2, 9, 11, 13, 14

*Lighthouse Financial Group v. Royal Bank of Scotland Group, PLC,*
  902 F. Supp. 2d 329 (S.D.N.Y. 2012).............................................................14

*Lin v. Interactive Brokers Group, Inc.,*
  574 F. Supp. 2d 408 (S.D.N.Y. 2008).............................................................15

*Lobatto v. Berney,*
  No. 98 CIV.1984 SWK, 1999 WL 672994 (S.D.N.Y. Aug. 26, 1999) ............................17

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC,*
  No. 12 Civ. 3723(RJS), 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013) .....................12, 17

*In re Marsh & Mclennan Cos., Inc. Securities Litigation,*
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)..............................................................13

*In re Merrill Lynch & Co., Securities, Dervative & ERISA Litigation,*
  No. 07 Civ. 9633(JSR), 2009 WL 4030869 (S.D.N.Y. March 3, 2009).......................9, 10

*Mills v. Polar Molecular Corp.,*
  12 F.3d 1170 (2d Cir. 1993)........................................................................17

*In re ProShares Trust Securities Litigation,*
  728 F.3d 96 (2d Cir. 2013)......................................................................10, 11

*Public Employees' Retirement System v. Merrill Lynch & Co.,*
  714 F. Supp. 2d 475 (S.D.N.Y. 2010)...............................................................18

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004)..............................................................9, 11, 14, 15

*Scone Investments, L.P. v. American Third Market Corp.,*
  No. 97 CIV. 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)...........................17

*Tierney v. Omnicom Group, Inc.,*
  No. 06 Civ. 14302(LTS)(THK), 2007 WL 2012412 (S.D.N.Y. July 11, 2007)...............17

## STATUTES AND RULES

15 U.S.C. § 77k....................................................................1, 7, 8, 10, 16, 17

15 U.S.C. § 77l..........................................................................1, 8, 17

Federal Rule of Civil Procedure 8 ..............................................................1, 16

Federal Rule of Civil Procedure 9 ...........................................................1, 9, 15

Federal Rule of Civil Procedure 12 ................................................................1

Defendants Barclays Capital Inc., Citigroup Global Markets Inc., RBC Capital Markets, LLC, Wells Fargo Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Credit Suisse Securities (USA) LLC, Raymond James & Associates, Inc., UBS Securities LLC, Goldman, Sachs & Co., J.P. Morgan Securities LLC, Robert W. Baird & Co. Incorporated, BMO Capital Markets Corp., Crédit Agricole Securities (USA) Inc., CIBC World Markets Corp., Howard Weil Incorporated (n/k/a Scotia Capital (USA) Inc.) and Mitsubishi UFJ Securities (USA), Inc. (the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Counts I and III of the Consolidated Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl.") with prejudice, pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  To the extent applicable to them, the Underwriter Defendants adopt the arguments set forth in the LINN Defendants' Memorandum of Law in support of their motion to dismiss the Amended Complaint (the "LINN Defendants' Memorandum of Law").

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint purports to assert claims against the Underwriter Defendants – sixteen financial services firms that acted as underwriters in connection with Defendant LinnCo, LLC's ("LinnCo") October 12, 2012 initial public offering (the "IPO") – for violations of Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77*l*.  LinnCo is a publicly-traded company that owns units in Defendant Linn Energy, LLC ("LINN"), an independent energy company, as its sole asset.

The Amended Complaint, which is long on words but short on detail, generally alleges that the registration statement and prospectus for the IPO were "false and misleading" because they purportedly failed to disclose that certain of LINN's non-GAAP financial measures, including adjusted earnings before interest, taxes, depreciation and amortization ("EBITDA"),

excluded costs associated with LINN's hedging activities.  (*See* Am. Compl. ¶¶ 8-9.)  But, as set forth in the LINN Defendants' Memorandum of Law, LINN and LinnCo *publicly disclosed* before the IPO, at the time of the IPO and after the IPO that that these hedging expenses were not included in Adjusted EBITDA.  (*See* LINN Defs' Mem. of Law at 10-11.)  The Amended Complaint therefore is fatally defective and Counts I and III against the Underwriter Defendants should be dismissed with prejudice for the following reasons.

*First*, for the reasons set forth in the LINN Defendants' Memorandum of Law, the Amended Complaint fails to allege any actionable misstatements or omissions in the offering materials.  For this reason alone, Plaintiffs' Securities Act claims should be dismissed.  (*See* Point I *infra*.)

*Second*, the Amended Complaint alleges, among other things, that the Underwriter Defendants (i) had access to "material" information that was not disclosed in the offering documents; (ii) an "incentive" to "overlook" allegedly false statements in the offering documents; and (iii) "failed to perform reasonable and meaningful due diligence."  (Am. Compl. ¶¶ 59, 61.)  Where, as here, a complaint's "allegations that the Underwriter Defendants conducted deficient due diligence . . . are inextricably interwoven with suggestions that they deliberately turned a blind eye to known deficiencies," such allegations necessarily "sound in fraud" and the stringent pleading requirements of Federal Rule of Civil Procedure 9(b) are applicable.  *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976(LAP), 2008 WL 4449280, at *12-13 (S.D.N.Y. Sept. 30, 2008).  As set forth below, however, the Amended Complaint falls far short of Rule 9(b)'s pleading requirements.  (*See* Point II *infra*.)

*Finally*, the Amended Complaint fails adequately to plead facts demonstrating that Plaintiffs have standing to assert a Section 12(a)(2) claim against the Underwriter Defendants.

2

To have standing to sue under Section 12(a)(2), a plaintiff must allege facts sufficient to demonstrate that it purchased securities in the public offering at issue, directly from the defendant or defendants actually being sued.  *See, e.g., DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003).  Here, the Amended Complaint conclusorily alleges that certain Plaintiffs purchased LinnCo common stock "directly from *one* of the Underwriter Defendants" in the IPO (Am. Compl. ¶¶ 25, 294 (emphasis added)), without identifying, as it must, from which "one" of the *sixteen* Underwriters the shares were purportedly purchased.  Accordingly, Plaintiffs' Section 12(a)(2) claim should be dismissed.  (*See* Point III *infra.*)

For these and additional reasons outlined below and in the LINN Defendants' Memorandum of Law, Counts I and III of the Amended Complaint should be dismissed with prejudice against the Underwriter Defendants.

## **STATEMENT OF FACTS**[1]

A.   The Parties

1.   Plaintiffs

Lead Plaintiffs Ironworkers Local 580 – Joint Funds, Ironworkers Locals 40, 361 & 417 – Union Security Funds and Ironworkers Local 40 Building and General Funds allege only generally that they "purchased securities in the IPO on October 12, 2012 . . . at the offering price of $36.50, directly from one of the Underwriter Defendants."  (Am. Compl. ¶ 25.)  The Amended

---

[1] "In deciding a motion to dismiss, a court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit."  *Hallmark Inv. Holding Corp. v. Donald Paul Braman Trust*, No. 12 Civ. 8045(CM), 2013 WL 2933272, at *4 (S.D.N.Y. June 13, 2013) (McMahon, J.); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (holding that a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff[s] and upon which [they] relied in bringing the suit").

Complaint, however, fails to allege from which "one" of the sixteen Underwriter Defendants those purported purchases were made. There is no allegation that Lead Plaintiff Bonnie Stewart purchased any LinnCo securities.

      2.    <u>LinnCo and LINN</u>

LINN is an independent energy company that acquires and develops oil and natural gas properties. (Am. Compl. ¶ 3.) LINN is structured as a limited liability company that pays distributions to its unitholders. (*Id* ¶ 6.) The distributions are treated as partnership distributions for tax purposes. (*See* Stokes Decl. Ex. D at 3.)[2] LINN "units" are traded on the NASDAQ under the ticker symbol "LINE." (Am. Compl. ¶ 3.)

     LinnCo is a separate publicly-traded company that owns LINN units as its sole asset. (*Id.* ¶ 4.) LinnCo is taxed as a corporation, enabling investors who prefer a corporate tax structure to own an indirect interest in LINN. (*See* Stokes Decl. Ex. D at 1.) LinnCo's common shares are listed on the NASDAQ Global Select Market under the ticker symbol "LNCO." (Am. Compl. ¶ 4.)

      3.    <u>The Underwriter Defendants</u>

The Underwriter Defendants are sixteen financial services firms that acted as underwriters for the LinnCo IPO. (*See* Am. Compl. ¶¶ 41-56.)

B.   <u>The IPO</u>

On June 25, 2012, LinnCo and LINN filed a Form S-1 Registration Statement (the "Registration Statement") with the Securities and Exchange Commission (the "SEC"). (Am. Compl. ¶ 81.) Five amendments were filed between August 3, 2012 and October 11, 2012. (*Id.*) The final prospectus (the "Prospectus," together with the Registration Statement, the "Offering

---

[2] Citations to "Stokes Decl. Ex. __" are to documents attached as exhibits to the Declaration of Peter A. Stokes, dated November 4, 2013, submitted in support of the LINN Defendants' Motion to Dismiss the Amended Complaint.

Documents") was incorporated into the Registration Statement by way of an amendment filed

October 2, 2012.  (*Id.*)  The Registration Statement also expressly incorporated the following

LINN financial statements and footnotes: (i) Consolidated Balance Sheets as of December 31,

2011 and December 31, 2010, (ii) Consolidated Statements of Operations for the years ended

December 31, 2011, 2010 and 2009, (iii) Consolidated Statements of Unitholders' Capital for the

years ended December 31, 2011, 2010 and 2009, (iv) Consolidated Statements of Cash Flows for

the years ended December 31, 2011, 2010 and 2009, (v) Notes to Consolidated Financial

Statements, (vi) Condensed Consolidated Balance Sheets as of June 30, 2012 (Unaudited) and

December 31, 2011, (vii) Condensed Consolidated Statements of Operations for the three months

and six months ended June 30, 2012 and June 30, 2011 (Unaudited), (viii) Condensed

Consolidated Statement of Unitholders' Capital for the six months ended June 30, 2012

(Unaudited), (ix) Condensed Consolidated Statements of Cash Flows for the six months ended

June 30, 2012 and June 30, 2011 (Unaudited) and (x) Notes to Condensed Consolidated

Financial Statements (Unaudited).  (Stokes Decl. Ex. E at II-14.)

On October 12, 2012, LinnCo completed its Initial Public Offering of 34,787,500

common shares for approximately $1.2 billion in net proceeds.  (Am. Compl. ¶ 4.)  LinnCo used

those proceeds to acquire 34,787,500 LINN units.  (*Id.*)  The offering closed on October 17,

2012.  (*Id.* ¶ 58.)

C.     LINN's and LinnCo's Non-GAAP Disclosures[3]

Because LinnCo's sole purpose is to own LINN equity units, the Offering Documents

contained LINN's financial statements and reference LINN's filings with the SEC on Form 10-K.

(*See, e.g.*, Stokes Decl. Ex. D at F-13 (stating that the unaudited pro forma financial statements

---

[3] The Underwriter Defendants expressly incorporate the Statement of Factual Allegations set
forth in the LINN Defendants' Memorandum of Law, including its discussion of LINN's and
LinnCo's public disclosures.

contained in the Registration Statement "should be read in conjunction with [LINN's] historical

consolidated financial statements and the notes thereto included in its Annual Report on Form

10-K for the year ended December 31, 2011"); Stokes Decl. Ex. F at F-13 (same).)  LINN used

certain non-GAAP measures, including Adjusted EBITDA, to determine the cash distributions

the company expected to make to its unitholders.  (*See* Am. Compl. ¶ 84; Stokes Decl. Ex. D at

86, 116; Stokes Decl. Ex. F at 86-87.)  The Offering Documents specifically disclosed that such

non-GAAP financial measures "may not be comparable to similarly titled measures used by

other companies" and "should be considered in conjunction with income from continuing

operations and other performance measures prepared in accordance with GAAP, such as

operating income or cash flow from operating activities."  (Stokes Decl. Ex. D at 86; Stokes Decl.

Ex. F at 86.)

       As disclosed in the Offering Documents, LINN defined Adjusted EBITDA as "net

income (loss) plus" certain enumerated adjustments.  (Stokes Decl. Ex. D at 86; Stokes Decl. Ex.

F at 86; *see also* Am. Compl. ¶ 85.)  Those enumerated adjustments were: (1) net operating cash

flow from acquisitions and divestitures, effective date through closing date; (2) interest expense;

(3) depreciation, depletion and amortization; (4) impairment of long-lived assets; (5) write-off of

deferred financing fees; (6) (gains) losses on sale of assets and other, net; (7) provision for legal

matters; (8) loss on extinguishment of debt; (9) unrealized (gains) losses on commodity

derivatives; (10) unrealized (gains) losses on interest rate derivatives; (11) realized (gains) losses

on interest rate derivatives; (12) realized (gains) losses on canceled derivatives; (13) unit-based

compensation expenses; (14) exploration costs; (15) income tax (benefit) expense; and (16)

discontinued operations.  (Am. Compl. ¶ 85; Stokes Decl. Ex. D at 86-87; Stokes Decl. Ex. F at

86-87.)

LINN also measured its ability to pay distributions through its Distribution Coverage Ratio, another non-GAAP metric defined in the Offering Documents as "Distributable Cash Flow for 2011 divided by total cash distributions."  (Stokes Decl. Ex. D at 116; Stokes Decl. Ex. F at 116; Am. Compl. ¶ 88.)  Distributable Cash Flow ("DCF"), in turn, was defined as "Adjusted EBITDA . . . less cash interest expense and maintenance capital."  (Stokes Decl. Ex. D at 116; Stokes Decl. Ex. F at 116; Am. Compl. ¶ 88.)

LINN purchased various derivative contracts, including "put options," that allowed the company to lock in a fixed or guaranteed floor price for its production to mitigate the effect of fluctuating oil and gas prices.  (*See* LINN Defs' Mem. of Law at 7-8.)  The Offering Documents explicitly reference the fact that such premiums were paid by LINN in connection with the derivative contracts and the amounts of such payments.  (*See, e.g.* Stokes Decl. Ex. D at 58, 80, F-46; Stokes Decl. Ex. F at 58, 80, F-46.)  LINN's public filings further disclosed that although the "premiums paid for commodity derivatives" were included in the calculation of net cash from operating activities, such premiums were "not included in [A]djusted EBITDA."  (Stokes Decl. Ex. C at 59.)  Moreover, as discussed in the LINN Defendants' Memorandum of Law, LINN expressly disclosed that it treated its derivative contracts as assets on its balance sheet.  (*See* LINN Defs' Mem. of Law at 8-9.)  The premiums paid for those derivative contracts were amortized over the life of the derivative contracts and, therefore, properly excluded from Adjusted EBITDA which, stands for "earnings *before* interest, taxes, depreciation, and *amortization*."  (*See id.* (emphasis added).)

D.     The Claims Against the Underwriters

Plaintiffs purport to assert two claims against the Underwriter Defendants.  Count I alleges that the Underwriter Defendants violated Section 11 of the Securities Act, 15 U.S.C. § 77k, and Count III alleges that the Underwriter Defendants violated Section 12(a)(2) of the

Securities Act, 15 U.S.C. § 77*l*.[4]  The Amended Complaint generally alleges that: (i) the IPO

took place; (ii) certain financial institutions served as underwriters for the IPO; (iii) the Offering

Documents were "inaccurate and misleading, contained untrue statements of material facts,

omitted to state other facts necessary in order to make the statements made not misleading, and

omitted to state material facts required to be stated therein;" (iv) the Underwriter Defendants did

not make "a reasonable investigation or possess[] reasonable grounds for the belief that the

statements contained in the [Offering Documents] were true and/or without omissions of any

material facts, were not misleading;" and, as a result, (v) the Underwriter Defendants are liable

for violations of Sections 11 and 12(a)(2) of the Securities Act.  (Am. Compl. ¶¶ 25, 60, 273,

275-79, 289, 291-95.)

     In addition to these boilerplate allegations, the Amended Complaint further alleges that

(i) "the Underwriter Defendants were acutely aware that LINN's ability to maintain LINN's

distributable cash flow to a level where it could sustain its distribution was material to investors"

(Am. Compl. ¶ 61); (ii) "[u]nlike the investing public, the Underwriter Defendants had access to

information, including the amounts paid by LINN for the settled premiums of its put derivatives"

(*id.*); (iii) "[t]hat information readily confirmed that LINN was [allegedly] overstating its

distributable cash flow, which in turn inflated the price of its units and overstated LINN's ability

to make or sustain its distributions" (*id.*); and (iv) the Underwriter Defendants had financial

"incentive[s]" to "overlook Linn's [allegedly] false DCF statements and calculations" (*id.* ¶ 59).

---

[4] According to the Amended Complaint, "Count [III] is brought pursuant to § 12 of the Securities
Act, 15 U.S.C. §§77k." (Am. Compl. ¶ 289.)  15 U.S.C. § 77k, however, is the statutory
provision for Section 11 of the Securities Act, *not* Section 12.

## ARGUMENT

### COUNTS I AND III OF THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST THE UNDERWRITER DEFENDANTS

"'[A] complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face'" to survive a motion to dismiss.  *Hallmark Inv. Holding Corp. v. Donald Paul Braman Trust*, No. 12 Civ. 8045(CM), 2013 WL 2933372, at *4 (S.D.N.Y. June 13, 2013) (McMahon, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "Allegations that merely assert 'a legal conclusion couched as a factual allegation' or that 'amount to nothing more than a formulaic recitation of the elements' of a cause of action are 'not entitled to be assumed true.'" *Caldwell v. Berlind*, No. 13-156-cv, 2013 WL 5779021, at *3 (2d Cir. Oct. 28, 2013) (citation omitted).

Moreover, where Sections 11 and 12(a)(2) claims sound in fraud, they are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *see also Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (Securities Act claims "premised on allegations of fraud" are "subject to the heightened pleading standard of Rule 9(b)"); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976(LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008).  Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

The applicable test for determining whether a Securities Act claim "sounds in fraud" is whether the complaint includes "wording and imputations . . . classically associated with fraud." *Rombach*, 355 F.3d at 167, 172; *see also In re Merrill Lynch & Co.  Sec., Derivative & ERISA Litig.*, No. 07 Civ. 9633(JSR), 2009 WL 4030869, at *1 (S.D.N.Y. Mar. 3, 2009) (holding that Securities Act claims asserted against Merrill Lynch and the underwriters of certain bond

9

offerings utilized "'wording and imputations . . . classically associated with fraud'" and were therefore subject to the heightened pleading standards of Rule 9(b) (citation omitted)).  A plaintiff cannot avoid the heightened pleading requirements of Rule 9(b) by merely inserting boilerplate language into the complaint stating that its Securities Act claims "'do[] not sound in fraud.'"  *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (citation omitted); *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 440 (S.D.N.Y. 2000) (McMahon, J.) (plaintiffs cannot avoid Rule 9(b)'s heightened pleading standards by including a "boilerplate disclaimer of fraud in the Complaint").

## I.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE OFFERING DOCUMENTS

"Claims under [S]ections 11 and 12(a)(2) of the Securities Act have 'roughly parallel elements.'"  *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. 2011) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).  "Section 11 imposes liability on issuers and other signatories of a registration statement that 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'"  *Id.* (quoting 15 U.S.C. § 77k(a))).  "Section 12(a)(2) imposes liability under similar circumstances with respect to, *inter alia*, prospectuses."  *Id.* (citing 15 U.S.C. § 77 *l*(a)(2)).

Here, for the reasons set forth in the LINN Defendants' Memorandum of Law, Plaintiffs have failed to allege any actionable misstatements or omissions in the Offering Documents. (LINN Defs' Mem. of Law at 14-18.)  Accordingly, Plaintiffs' Securities Act claims against the Underwriter Defendants for violations of Sections 11 and 12(a)(2) fail as a matter of law.  *See, e.g.*, *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102-09 (2d Cir. 2013) (affirming district

court's dismissal of Securities Act claims asserted against issuer and underwriter, among others, for failure to allege any actionable misstatements or omissions in prospectuses).

## II.   PLAINTIFFS' SECURITIES ACT CLAIMS FAIL TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b)

### A.   Plaintiffs' Securities Act Claims Sound in Fraud and Are Therefore Subject to the Heightened Pleading Requirements of Rule 9(b)

As set forth above, claims under Sections 11 and 12(a)(2) of the Securities Act must comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure when they "sound in fraud." *Rombach*, 355 F.3d at 171; *see also Caiafa*, 331 F. App'x at 16. "The ultimate question is whether, at its core, the complaint is predicated on allegations of fraudulent conduct." *Ladmen Partners*, 2008 WL 4449280, at *11; *see also Caiafa*, 331 F. App'x at 16.

Here, the allegations contained in the Amended Complaint, including the allegations against the Underwriter Defendants, bristle with "wording and imputations . . . classically associated with fraud." *Rombach*, 355 F.3d at 172. For example, Plaintiffs allege that (i) the Underwriter Defendants were "*acutely aware* that LINN's ability to maintain LINN's distributable cash flow to a level where it could sustain its distribution was material to investors" (Am. Compl. ¶ 61 (emphasis added)); (ii) "*[u]nlike the investing public, the Underwriter Defendants had access to information*, including the amounts paid by LINN for the settled premiums of its put derivatives" (*id.* (emphasis added)); (iii) such "information, readily confirmed that LINN was [allegedly] overstating its distributable cash flow, which in turn inflated the price of its units and overstated LINN's ability to make or sustain its distributions" (*id.*); and (iv) the Underwriter Defendants had an "incentive" to "overlook Linn's [allegedly] false DCF statements and calculations" (*id.* ¶ 59). Allegations such as these clearly "infer an intent to defraud, and are therefore subject to the heightened pleading requirements of Rule

11

9(b)." *Coronel v. Quanta Capital Holdings, Ltd.*, No. 07 Civ. 1405(RPP), 2009 WL 174656, at *15 (S.D.N.Y. Jan. 26, 2009).

The Amended Complaint, moreover, is replete with scienter-type allegations of the Underwriter Defendants' alleged motives to purportedly overlook known deficiencies.  For example, the Amended Complaint alleges that "[a]ffiliates of most of the Underwriter Defendants were lenders under LINN's revolving credit facility and stood to benefit – and in fact benefited greatly – from the offering if Linn elected to use the proceeds received to repay debt outstanding under that facility" and that affiliates of certain of the Underwriter Defendants "'each receive[d] more than 5% of the net proceeds of th[e] offering.'"  (Am. Compl. ¶ 59; *see also id.* ¶¶ 41, 43, 44.)[5]  These are precisely the type of allegations that one would expect to find in a claim for fraud.  Indeed, in the section of the Amended Complaint entitled "Additional Scienter Allegations," Plaintiffs allege that certain of the individual defendants had similar financial "motives" to engage in what Plaintiffs contend was a "*fraudulent* course of conduct." (Am. Compl. ¶¶ 252-54 (emphasis added).)

Further, Plaintiffs' numerous fraud allegations fail to distinguish the Underwriter Defendants (against whom only Securities Act claims are alleged) from the LINN Defendants (against whom both Securities Act and Exchange Act claims are alleged), leaving no doubt that Plaintiffs' Securities Act allegations are inextricably interwoven with those allegations sounding in fraud.  (*See, e.g.*, Am. Compl. ¶ 8 ("*Defendants* significantly overstated LINN's available cash for distribution to its unitholders and *misrepresented* the true risk associated with LINN's ability

---

[5]  In all events, under well-settled Second Circuit precedents, such alleged "motive[s]," "which could be imputed to any . . . for-profit endeavor," would not suffice to establish scienter.  *Chill v. Gen. Electric Co.*, 101 F.3d 263, 268 (2d Cir. 1996); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12 Civ. 3723(RJS), 2013 WL 1294668, at *14 (S.D.N.Y. Mar. 28, 2013) ("'[A] desire to earn transactional fees . . . is [in]sufficient to establish scienter.'" (citation omitted)).

to continue to issue stable or increasing distributions. *Defendants failed to disclose* that . . . LINN disseminated key financial metrics to investors that . . . excluded the significant cost of settled put options it purchased as part of its hedging strategy, but included the proceeds it received from the sale or exercise of those options. . . .") (emphasis added); ¶ 9 ("*Defendants disclosed false and misleading* 'non-GAAP' financial measures…and *made false and misleading statements* about its DCF. . . .") (emphasis added); ¶17 ("*Defendants* were aware that the market regarded LINN's non-GAAP financial metrics as important in assessing the Company's value as an investment. . .") (emphasis added); ¶ 18 ("*Defendants' failure to disclose* that seminal information [-- the put-option premiums --] misled LINN unitholders, as well as LNCO shareholders . . . thereby causing the prices of LINN units and LNCO shares to be artificially inflated during the Class Period.") (emphasis added).)  Significantly, these allegations, which are incorporated by reference into Plaintiffs' Sections 11 and 12(a)(2) claims asserted against the Underwriter Defendants (Am. Compl. ¶¶ 272, 288)[6], serve only to underscore that Plaintiffs' claims against the Underwriter Defendants "sound in fraud."  *See Ladmen Partners*, 2008 WL 4449280, at *12 (holding that Securities Act claims asserted against underwriters "sound[ed] in fraud" where, among other things, the complaint failed to distinguish between the underwriters and the other defendants in connection with "a number of allegations of essentially fraudulent conduct").

---

[6] Paragraphs 272 and 288 purport to exclude "allegations . . . based on fraud" from incorporation into Plaintiffs' Securities Act claims.  (Am. Compl. ¶¶ 272, 288.)  Such a disclaimer, however, is ineffective.  *See, e.g.*, *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) (holding that "[p]laintiffs cannot repeat and reallege each and every allegation contained in the Complaint, and then attempt to disclaim those allegations in the very next paragraph by stating [that] [a]ll of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from the Section 11 count") (internal quotations and citations omitted).

Plaintiffs cannot avoid Rule 9(b)'s heightened pleading standards by including allegations that "the Underwriter Defendants [allegedly] failed to perform reasonable and meaningful due diligence" and that such alleged "failure constituted a substantial factor to the [purported] harms give rising to Plaintiffs' claims." (Am. Compl. ¶ 61.) Where, as here, "allegations that the Underwriter Defendants conducted deficient due diligence . . . are inextricably interwoven with suggestions that they deliberately turned a blind eye to known deficiencies," such allegations "sound in fraud" and Rule 9(b)'s heightened pleading standards will apply. *Ladmen Partners*, 2008 WL 4449280, at *12. Likewise, Plaintiffs' boilerplate disclaimer that their Securities Act claims "do[] not sound in fraud" (Am. Compl. ¶¶ 274, 290) is insufficient to avoid Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *Lighthouse Financial Group v. Royal Bank of Scotland Group, PLC*, 902 F. Supp. 2d 329, 340 (S.D.N.Y. 2012) (a Section 11 claim that is "predicated on fraud is subject to the particularity requirement of Rule 9(b), despite any disclaimer a plaintiff makes to the contrary"); *Am. Bank Note Holographics*, 93 F. Supp. 2d at 440 (plaintiffs cannot avoid Rule 9(b)'s heightened pleading standards by including a "boilerplate disclaimer of fraud in the Complaint").

Finally, the Second Circuit's decision in *Rombach*, 355 F.3d at 178, as well as this Court's holding in *American Bank Note Holographics*, 93 F. Supp. 2d at 440, that Securities Act claims asserted against the underwriters in those cases did not "sound in fraud" do not warrant a different result here. In *Rombach*, the court found that allegations that the underwriter defendants had failed to make a reasonable and diligent investigation sounded in negligence. *See Rombach*, 355 F.3d at 178. In *American Bank Note Holographics*, plaintiffs "merely" alleged that the underwriter defendants failed to disclose certain information that had an unfavorable impact on the company's net revenues and income. *Id.* at 440. Here, unlike in *Rombach* and

14

*American Bank Note Holographics*, Plaintiffs allege much more than a mere failure to conduct

sufficient due diligence or negligence.  Plaintiffs assert, among other things, that the Underwriter

Defendants had access to purportedly "material" information that was not disclosed in the

Offering Documents and an "incentive" to "overlook" allegedly false statements in the Offering

Documents – *i.e.*, "wording and imputations . . . classically associated with fraud."  *Rombach*,

355 F.3d at 172.  Moreover, as discussed above, the Amended Complaint here is replete with

scienter-type allegations of motive and contains numerous "fraud" allegations asserted against

"Defendants" generally that are incorporated by reference into Plaintiffs' Securities Act claims.

> B.    The Amended Complaint Fails to Plead Fraud Against
>        the Underwriter Defendants with the Requisite Particularity

 "Rule 9(b) requires that the 'circumstances constituting fraud . . . be stated with

particularity.'"  *Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 414-15 (S.D.N.Y.

2008) (McMahon, J.) (citation omitted).  Plaintiffs here unequivocally do not meet this standard

in connection with their claims against the Underwriter Defendants.

As an initial matter, the Amended Complaint fails to plead any facts, let alone

particularized facts, to support the conclusory assertions that the Underwriter Defendants failed

to "perform reasonable and meaningful due diligence" and turned a blind eye to known

deficiencies in the Offering Documents.  (*See* Am. Compl. ¶¶ 59, 61.)  Indeed, while the

Amended Complaint conclusorily alleges that the Underwriter Defendants had access to

undisclosed "material" information that purportedly "confirmed that LINN was overstating its

distributable cash flow" (*id.* ¶ 61), the Amended Complaint does not, as it must, "'specifically

identify the reports or statements containing this information.'"  *Coronel*, 2009 WL 174656, at

*16 (dismissing Section 11 claims that sounded in fraud where "the Complaint charge[d] that the

Company had access to facts demonstrating its knowledge of the inaccuracy of the $68.5 million

hurricane loss estimate" but failed to specifically identify "'the reports or statements containing this information.'") (citing *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).

The Amended Complaint's complete absence of factual support with regard to each of the Underwriter Defendants mandates dismissal of Plaintiffs' Securities Act claims even under the more liberal pleading standards of Rule 8(a). *See Caldwell*, 2013 WL 5779021, at *3 (affirming dismissal of Securities Act claims under Rule 8(a) where complaint's "conclusory allegations" did not "contain sufficient facts to establish a plausible claim to relief under any theory"); *see also, e.g.*, *Iqbal*, 556 U.S. at 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008) ("'Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations' and will not defeat [a] motion [to dismiss].") (citation omitted), *aff'd*, 347 F. App'x 665 (2d Cir. 2009).

To the extent that Plaintiffs are alleging that the Underwriter Defendants' purported lack of due diligence is somehow itself a basis for liability under Sections 11 or 12(a)(2) (*see* Am. Compl. ¶¶ 278, 293), they are wrong. Section 11 only provides a cause of action for a misrepresentation or omission of "'a material fact required to be stated [in the offering documents] or necessary to make the statements therein not misleading.'" *Fait*, 655 F.3d at 109 (quoting 15 U.S.C. § 77k). "Section 12(a)(2) imposes liability under similar circumstances with respect to, *inter alia*, prospectuses." *Id.* (citing 15 U.S.C. § 77 l(a)(2)). Nowhere do those statutes impose a duty to conduct due diligence, or provide a cause of action against an entity that did not conduct due diligence in a particular manner. Due diligence is instead an affirmative defense available to certain parties, such as underwriters, accused of violating Sections 11 or

16

12(a)(2), *see* 15 U.S.C. §§ 77k(b)(3), 77*l*(a)(2), and, therefore, "does not give rise to a cause of action." *Galvin v. First Nat'l Monetary Corp.*, 624 F. Supp. 154, 158 (E.D.N.Y. 1985) ([A]n affirmative defense . . . does not give rise to a cause of action."); *see also, e.g.*, *Tierney v. Omnicom Grp., Inc.*, No. 06 Civ. 14302(LTS)(THK), 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) (dismissing plaintiff's claims for waiver, estoppel and unclean hands because they are affirmative defenses not causes of action).

Moreover, "a complaint may not rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the [alleged] fraud." *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 CIV. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" (citation omitted)).  The Amended Complaint, however, makes *no effort* to distinguish among the *sixteen* separate Underwriter Defendants.  This type of generalized pleading is likewise fatal to Plaintiffs' Securities Act claims.  *See, e.g.*, *Loreley Fin.*, 2013 WL 1294668, at *9 (dismissing fraud claims against certain defendants where plaintiffs referred generally to "Wachovia" and failed to identify "which of the Wells Fargo Defendants is responsible—through its Wachovia predecessor—for the representations"); *Lobatto v. Berney*, No. 98 CIV. 1984 SWK, 1999 WL 672994, at *10 (S.D.N.Y. Aug. 26, 1999) (dismissing fraud claims where complaint "fail[ed] to specifically identify each defendant's role in the fraud and the allegedly fraudulent statements made by each defendant"); *see also, e.g.*, *Clayton's Auto Glass, Inc. v. First Data Corp.*, No. 12-CV-5018 (JS)(AKT), 2013 WL 5460872, at *5 (E.D.N.Y. Sept. 30, 2013) (dismissing fraud claim where the complaint referred to the defendants collectively, holding "[s]uch 'group pleading' fails to give each defendant fair notice of the

claims against it . . . and, thus fails to satisfy either the notice pleading requirements of Rule 8 or the heightened pleading standard under Rule 9(b)." (citation omitted))  Accordingly, Plaintiffs' Securities Act claims asserted against the Underwriter Defendants fail as a matter of law.

## III.    PLAINTIFFS LACK STANDING TO SUE UNDER SECTION 12(a)(2)

To have standing to sue pursuant to Section 12(a)(2), a Plaintiff must allege facts demonstrating that it purchased the subject securities in the public offering at issue directly from a particular defendant or defendants.  *See Freidus v. Barclays Bank PLC*, __ F.3d __, No. 11-2655-CV, 2013 WL 4405291, at *7 (2d Cir. Aug. 19, 2013) ("In order to have standing under § 12(a)(2), . . . plaintiffs must have purchased securities directly from the defendants.") (citation omitted).  Here, Plaintiffs conclusorily allege that they purchased LinnCo common stock "directly from *one* of the Underwriters" in the IPO.  (*See* Am. Compl. ¶¶ 25, 294 (emphasis added).)  Yet, they fail to allege, as they must, from which "one" of the *sixteen* Underwriters the shares were purportedly purchased.  For this reason alone, Plaintiffs' Section 12(a)(2) claim should be dismissed.  *See, e.g.*, *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003)  (dismissing Section 12 claim against underwriter defendants because "the amended complaint [did] not aver that any defendant was the immediate seller to any named plaintiffs," or that any defendant "actively solicited any named plaintiff in connection with the sale" of the securities at issue).[7]

---

[7] To the extent Plaintiffs' purported "class" definition includes after-market purchasers (*see* Am. Compl. ¶ 266), such putative class members necessarily would not have standing to assert a claim under Section 12(a)(2).  *See Pub. Employees' Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (dismissing Section 12(a)(2) claim where complaint did not allege that plaintiffs purchased shares in public offering).

## **CONCLUSION**

For the foregoing reasons, the Underwriter Defendants respectfully request that Counts I and III of the Amended Complaint be dismissed against them in their entirety with prejudice.

Dated:   New York, New York
            November 4, 2013

Respectfully submitted,

/s/ Jay B. Kasner
Jay B. Kasner
Susan L. Saltzstein
Gary J. Hacker
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000
jay.kasner@skadden.com
susan.saltzstein@skadden.com
gary.hacker@skadden.com

Attorneys for the Underwriter Defendants